IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs, April 2, 2007

## RONALD K. PENDERGRAPH, v. J. HILTON CONGER

**Direct Appeal from the Circuit Court for Van Buren County**
**No. 1254C      Hon. Larry B. Stanley, Jr., Circuit Judge**

_____

**No. M2005-01595-COA-R3-CV - Filed on May 4, 2007**

_____

In this action for legal malpractice against defendant attorney, the Trial Court granted defendant summary judgment on the ground that plaintiff, as a condition precedent to maintaining the malpractice action, had to obtain post-judgment relief from his criminal conviction, which plaintiff had failed to do after bringing his post-judgment action. On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and D. MICHAEL SWINEY, J., joined.

Ronald Kevin Pendergraph, Pikeville, Tennessee, *pro se.*

William E. Godbold, III, and Bruce D. Gill, Chattanooga, Tennessee, for Appellee.

**OPINION**

Plaintiff, a prisoner acting *pro se*, sued defendant, an attorney, alleging the attorney was guilty of legal malpractice. Plaintiff alleged that his aunt paid defendant $2,000.00 to represent plaintiff regarding charges of DUI and habitual offender, and defendant failed to investigate the charges, file any motions, or appear in court on plaintiff's behalf. Plaintiff averred that when defendant failed to appear in court on his behalf, he was "forced" to take a plea bargain that he did not want, because the District Attorney threatened that they would proceed to trial whether plaintiff's attorney was there or not.

Defendant Answered, denying he was retained or accepted employment to defend plaintiff against his criminal charges. He admitted that he visited plaintiff in jail, and admitted that he did not appear in court on plaintiff's behalf. Further, that plaintiff entered into the plea agreement voluntarily upon the advice of his court-appointed counsel, Scott Grissom. Defendant pled the one year statute of limitations and estoppel. Defendant averred that plaintiff asked him to look into the matter and see if he could get plaintiff a better plea agreement, and he agreed to that limited representation for a fee of $2,000.00.

Plaintiff then filed various documents in support of his claims, including a letter from defendant, wherein defendant states "we are not going to get very far on a motion to enforce the plea agreement", because attorney Grissom would not testify that any such agreement was definitely made, and the DA said he had no authority to make such an agreement. The letter then advises that the DA is offering a four year sentence at Range III, not to be served concurrently with his other sentence. Defendant stated that plaintiff's only option was to go to court, but he did not think he would be very successful in defending on the habitual offender charge, and that he could possibly beat the DUI charge with testimony from an expert on breathalyzers, which would cost $1,500.00. Defendant asked plaintiff to think about it and call him.

Plaintiff also attached a letter he received from defendant, wherein defendant was responding to a complaint filed by plaintiff with the Board of Professional Responsibility. Defendant stated that plaintiff's aunt contacted him on June 4, 2002, and asked him to look into plaintiff's case and see if he could get him a better plea offer. He stated that he agreed to do so for $2,000.00. Defendant stated there was no discussion of going to trial, and that in his conversations with plaintiff, going to trial was "always ruled out as an option." Defendant explained he never filed a Motion to enforce the plea agreement which plaintiff alleged was made in General Sessions, because none of the other parties who were present on that day remembered such an agreement being made (including plaintiff's wife). Defendant stated that he did not attend the Court's trial date, because the DA's office told him that plaintiff's case would not be heard due to a rape trial which had priority. Defendant stated the rape trial did proceed as planned, and that plaintiff's case would not have been heard if he had not accepted the State's offer.

Defendant filed a Motion for Summary Judgment, asserting that plaintiff's claim of legal malpractice was barred by collateral estoppel.

Defendant asserted that in order for plaintiff to maintain a legal malpractice action against his former criminal defense attorney, he must first establish that he was entitled to post-conviction relief. Defendant stated that plaintiff's request for post-conviction relief had been denied, and he was estopped to proceed in this action.

Defendant filed a Statement of Undisputed Material Facts, wherein he stated he had never entered an appearance as attorney of record for the plaintiff in his criminal case, that plaintiff had entered into a guilty plea with the assistance of counsel, that plaintiff admitted in his deposition that he was driving on a revoked license and had been drinking at the time of his arrest, and that

plaintiff had been denied post-conviction relief.

Defendant attached plaintiff's Plea of Guilty and Waivers of Jury Trial and of Appeal, which were signed by the plaintiff and his court-appointed counsel. Also attached was the Order of the Van Buren County Circuit Court, which denied plaintiff post-conviction relief, finding that his guilty plea was voluntarily made and that he had effective assistance of counsel. The Court found that Grissom was unprepared to try the case on June 2, 2003, and that while "there may have been some confusion as to who was going to represent the Petitioner at trial, the attorney of record, Scott Grissom, should have been prepared to try the Petitioner's case on June 2nd. However, this point became moot when the jury trial for the other case set that day was picked. The Defendant knew at that time that his case would be tried on another day." The Court also found that Grissom had advised plaintiff of his rights, his likelihood of success at trial, etc., and that plaintiff was very familiar with the workings of the judicial system. The Court then found that plaintiff's plea bargain was voluntarily, intelligently, and knowingly made.

Plaintiff filed a Motion in Opposition to Summary Judgment, attaching some of the same materials he had filed earlier in this case, including letters written by defendant, affidavits of Ms. Hawkins and Ms. Caldwell, and the transcript of the hearing before the parole board.

The Trial Court granted defendant's Motion for Summary Judgment, on the ground that plaintiff had to show that but for the defendant's conduct, the conviction would not have occurred. The Court found that collateral estoppel would apply, relying on *Gibson v. Trant*, 58 S.W.3d 103 (Tenn. 2001).

On appeal, plaintiff raises these issues:

1.      Whether the Trial Court erred by failing to construe the Complaint with the deference to which pro se litigants are entitled?

2.      Whether the Trial Court erred in granting summary judgment when the defendant failed to fulfill his burden of demonstrating that no genuine issue of material fact existed?

3.      Whether the Trial Court erred in applying the doctrine of collateral estoppel to plaintiff's claims?

4.      Whether the Trial Court erred in relying upon the case of *Gibson v. Trant*, 58 S.W.3d 103 (Tenn. 2001) as a basis for granting summary judgment?

Plaintiff argues that genuine issues of material fact exist, and that collateral estoppel should not apply. As the Supreme Court has stated:

Once it is shown by the moving party that there is no genuine issue of material fact,

the nonmoving party must then demonstrate, by affidavits or discovery materials, that there is a genuine, material fact dispute to warrant a trial. In this regard, Rule 56.05 provides that the nonmoving party cannot simply rely upon his pleadings but must set forth specific facts showing that there is a genuine issue of material fact for trial. "If he does not so respond, summary judgment ... shall be entered against him." Rule 56.05.

*Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993)(citations omitted).

Plaintiff's reliance on alleged issues of material fact is misplaced. The Trial Court found that plaintiff entered into the plea agreement voluntarily and with the effective assistance of counsel, and that plaintiff was not entitled to post-conviction relief, pursuant to the holding in *Gibson*, and that plaintiff could not go forward with his malpractice action unless he was able to show he was granted post-conviction relief.

In *Gibson,* the plaintiff asserted that he was coerced into pleading guilty by his criminal defense attorneys, and was told that he would only receive a sentence of 8-10 years, but then was sentenced to twenty years pursuant to the federal sentencing guidelines. *Id.* at 105. Plaintiff then filed a civil lawsuit against his defense attorneys, claiming legal malpractice, gross negligence, outrageous conduct, and fraud. *Id.* Plaintiff also filed a motion for habeas corpus relief in the federal district court, seeking to have his plea vacated. *Id*. at 106. Plaintiff was denied relief by the district court and the Sixth Circuit Court of Appeals. *Id*. The trial court then dismissed his claims in the civil lawsuit against his former attorneys, finding that plaintiff had to obtain post-conviction relief before he could maintain a legal malpractice action. *Id*. at 107.

Both this Court and the Supreme Court affirmed that ruling, and the Supreme Court explained that:

criminal malpractice actions arise out of criminal convictions, and the validity of criminal convictions are not designed to be tested in the civil tort arena. They are not so designed for two reasons. First, depending on the relief sought, civil damage remedies, if awarded, may necessarily imply that the criminal courts reviewing the conviction erred. . . . The second reason is that the "criminal justice system itself provides adequate redress for any error or omission," and the many safeguards in the system - the requirement of proof beyond a reasonable doubt, the exclusionary rule, the right to counsel, etc. - are designed to ensure that allegations such as [plaintiff's] do not go unremedied. . . . Another reason that courts have prevented criminal malpractice actions from proceeding absent post-conviction relief is the doctrine of collateral estoppel (also called "issue preclusion"). "Once an issue has been actually or necessarily determined by a court of competent jurisdiction, the doctrine of collateral estoppel renders that determination conclusive on the parties and their privies in subsequent litigation, even when the claims or causes of action are different."

-4-

*Id.* at 112-113 (citations omitted).

The Supreme Court clearly held that a criminal defendant had to seek redress through the post-conviction process regarding his conviction, and if such relief was denied, he could not "thereafter bring a civil claim based on the same allegations brought before the post-conviction court." *Id.* at 115.

In this case plaintiff is asserting the same type of factual scenario as in *Gibson*, i.e. that he entered into his guilty plea involuntarily as the result of some action/inaction of his defense attorney. Plaintiff, like the plaintiff in *Gibson*, failed to gain any post-conviction relief on the same factual allegations that he presented in his civil action. As such, the Trial Court properly held the plaintiff's claims were barred by collateral estoppel, and defendant was entitled to summary judgment.

Plaintiff also argues that the Trial Court ignored the other claims he asserted in his Complaint, and thus failed to liberally construe his Complaint to allege causes of actions for fraud, "neglect", and property damage. This argument was also addressed by the Supreme Court in *Gibson*, wherein that plaintiff asserted that he still had viable causes of action for negligence, outrageous conduct, and fraud, even if his malpractice claim was barred. *Id.* at 116. The Supreme Court stated that since the factual allegations were the same in his habeas petition and in his malpractice action, "all of Gibson's allegations can be reduced to the charge that he suffered damage because his lawyers induced him to plead guilty involuntarily. As we have explained, the federal courts have considered and rejected this charge. Gibson is not entitled to relitigate these claims in the guise of a malpractice suit." *Id.* at 116-117.

Similarly, here, it is clear that plaintiff's post-conviction case involved the same factual allegations as in his civil action, as the Order denying post-conviction relief demonstrated. As in *Gibson*, all plaintiff's allegations can be reduced to the charge that he suffered damage because defendant was ineffective, causing him to plead guilty involuntarily.

For the foregoing reasons, we affirm the Trial Court's grant of summary judgment and remand, with the cost of the appeal assessed to Ronald Kevin Pendergraph.

_____
HERSCHEL PICKENS FRANKS, P.J.

-5-